

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

**RECEIVED**

NOV 13 2018

THOMAS G. BRUTON
CLERK U.S. DISTRICT COURT

MAURICE PEARSON

PLAINTIFF (S)

V

TAX EXEMPT WORLD

DEFENDANT (S)

1:18-cv-07514
Judge Jorge L. Alonso
Magistrate Judge Mary M. Rowland

Amount Claimed: $500,000.00

## COMPLAINT

Plaintiff states the following for his complaint:

- The Plaintiff is Maurice Pearson
- Defendant is Tax Exempt World
- The Court has subject matter jurisdiction pursuant to 28 U.S.C. 1338 and 15 U.S.C. 1121

Now comes the Plaintiff, Maurice Pearson, and file a complaint against the Defendant, Tax Exempt World for Business Tort, Negligence, Trademark /Service mark Infringement, Breach and Duty.

Taxexemptwsorld.com involved online practices that resulted in an intentional and improper interference with the business interests of the plaintiff nonprofit organization 501c3 named Unit 3 Charity Foundation for the Homeless, which included loss of business opportunities, loss of clients, and loss of business relations. Because of this the Plaintiff is asking for relief in damages caused by the defendant.

### Business Tort, Negligence, Infringement, Breach and Duty

1. On an online taxemptworld.com document dated 8-7-2016 tax exempt world displayed incorrect zip code 60601 related to the plaintiff nonprofit 501c3 Unit 3 Charity Foundation for the Homeless. The correct zip code on 8-7-2016 for unit 3 charity foundation for the homeless was 60664.
2. On and about 8-7-2016 the plaintiff contacted tax exempt world at 1 866 796-2218 to get the defendant e-mailing contact information.
3. On Monday 8-29-2016 6:50pm the plaintiff emailed the defendant at generaladmin@taxexemptworld.com asking to delete his nonprofit website information from their account and website listing and stated he prefer not to have his website information displayed. Subject: **Removal from website listing**
4. On an online document from taxexemptworld.com dated 12-2-2016 the defendant continued to display the defendant website information and service mark without consent of the plaintiff even after the plaintiff sent an email stating he did not want his website information to be displayed and deleted from their listing.
5. On or about 12-4-2016 the plaintiff called the Illinois Attorney General Office in Springfield IL-Consumer Fraud Bureau 217 782-1090 to verbally complain about tax exempt world online practices.
6. On 12-5-2016 the plaintiff filed a Consumer Complaint ON-Line Submission Form with the Illinois Attorney General Consumer Fraud Bureau. The plaintiff was given an online reference number OAG2016-00033032.
7. On or about 2-18-2017 the defendant website taxexemptsworld.com continued to display the plaintiff nonprofit service mark and website information without the plaintiff consent.
8. On and about 2-27-2017 the plaintiff submitted Consumer Complaint On-Line Submission Forms to the Illinois Attorney General Office Reference number OAG2017-000036324.

1. Under 15 U.S.C. 1114 (1) The plaintiff had a valid and legally protectable trademark or servicemark; (2) The plaintiff owned the mark; and (3) The defendant's use of the mark to identify the plaintiff services caused a likelihood of confusion.
2. The plaintiff had a valid mark entitled to protection; and the defendant used the plaintiff mark in commerce in connection with the sale or advertising of goods or services without the plaintiff's consent. The defendants website continuously continued to display inaccurate information about the plaintiff business and after telling the plaintiff on numerous times they would remove the plaintiff information from their marketing listing the defendants fail to do so over an extended period of time thereby failing their duty and causing a breach.
3. The Plaintiff is seeking injunctive relief; an accounting for profits; damages, including the possibility of treble damages when appropriate; attorney fee's in exceptional case, and costs pursuant to 15 U.S.C. 1117.

**Because of the defendant negligent practices that resulted in an intentional and improper interference with the business interests of Unit 3 Charity Foundation for the Homeless the plaintiff nonprofit 501c3 included loss of business opportunities, loss of clients and loss of business relations. Because of this the plaintiff is seeking relief in damages of $250, 000.00**

**WHEREFORE:** Plaintiff prays that the Court order the defendant to pay $250,000.00 because of the defendant interference with the plaintiff nonprofit transactions, business relationships and economic loss pursuant to **15 U.S.C. 1114** The defendant infringed on the plaintiff service mark causing a violation under the Trademark infringement Lanham Act for a registered mark. (1) The plaintiff had a valid and legally protectable trademark or servicemark; (2) The plaintiff owned the mark; and (3) The defendant's use of the mark to identify the plaintiff services caused a likelihood of confusion. The plaintiff had a valid mark entitled to protection; and the defendant used the plaintiff mark in commerce in connection with the sale or advertising of goods or service. The Plaintiff is seeking injunctive relief; an accounting for profits; damages, including the possibility of treble damages when appropriate; attorney fee's in exceptional case, and costs pursuant to **15 U.S.C. 1117.**

## Business Tort, Negligence, Infringement, Breach and Duty

9. On an online taxemptworld.com document dated 8-7-2016 tax exempt world displayed incorrect zip code 60601 related to the plaintiff nonprofit 501c3 Unit 3 Charity Foundation for the Homeless. The correct zip code on 8-7-2016 for unit 3 charity foundation for the homeless was 60664.
10. On and about 8-7-2016 the plaintiff contacted tax exempt world at 1 866 796-2218 to get thedefendant e-mailing contact information.
11. On Monday 8-29-2016 6:50pm the plaintiff emailed the defendant at generaladmin@taxexemptworld.com asking to delete his nonprofit website information from their account and website listing and stated he prefer not to have his website information displayed. Subject: **Removal from website listing**
12. On an online document from taxexemptworld.com dated 12-2-2016 the defendant continued to display the defendant website information and service mark without consent of the plaintiff even after the plaintiff sent an email stating he did not want his website information to be displayed and deleted from their listing.
13. On or about 12-4-2016 the plaintiff called the Illinois Attorney General Office in Springfield IL-Consumer Fraud Bureau 217 782-1090 to verbally complain about tax exempt world online practices.
14. On 12-5-2016 the plaintiff filed a Consumer Complaint ON-Line Submission Form with the Illinois Attorney General Consumer Fraud Bureau. The plaintiff was given an online reference number OAG2016-00033032.
15. On or about 2-18-2017 the defendant website taxexemptsworld.com continued to display the plaintiff nonprofit service mark and website information without the plaintiff consent.
16. On and about 2-27-2017 the plaintiff submitted Consumer Complaint On-Line Submission Forms to the Illinois Attorney General Office Reference number OAG2017-000036324.

**Because of the defendant negligent practices that resulted in an intentional and improper interference with the business interests of Unit 3 Charity Foundation for the Homeless,the plaintiff nonprofit 501c3 included loss of business opportunities, loss of clients and loss of business relations. Because of this the plaintiff is seeking relief in damages of $250, 000.00**

**WHEREFORE:** Plaintiff prays that the court order defendant to pay: $500, 000.00 because of the defendant interference with the plaintiff nonprofit transactions, business relationships and economic loss. The plaintiff is asking for relief in damages for $500, 00.00

The plaintiff is seeking relief in damages in the amount of $500, 000.00 pursuant to the **Trademark Registration and Protection Act (765 ILCS 1036/60) Section 60 Infringement.** Subject to the provisions of Section 80 of this Act, a person shall be liable in a civil action by the registrant for any and all of the remedies provided in Section 70 of this Act if the person: (A) Uses without the consent of the registrant, any reproduction, counterfeit, copy of colorable imitation of a mark registered under this act in connection with the sale, distribution, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive as to the source of origin of such good or services. Pursuant to **Property 765 ILCS 1036 Trademark Registration and Protection Act."Service Mark"(2) (h)** "Servicemark" means any work, name, symbol, or device or any combination thereof used by a person, to identify and distinguish the service of one person, including a unique service, from the services of others, and to indicate the source of the services, even if that source is unknown Titles, character names used by a person, and other distinctive features of radio or television programs may be registered as servicemarks notwithstanding that they, or the programs, may advertise the goods of the sponsor. Because of the defendant econonomic and business tort of interference with Unit 3 Charity Foundation for the Homeless economic and business relationships and likely economic loss the plaintiff is asking for damages Pursuant to **ILCS 1036/65 Injury to business reputation. Sec.65.**Injury to business reputation: dilution. (a) The owner of a mark which is famous in this State shall be entitled subject to the principles of equity and upon such terms as the court deems reasonable., to an injunction against another person's commercial use of a mark or tradename, if the use begins after the mark has become famous and causes dilution of these distinctive quality of the mark, and to obtain such other relief as is provided in this Section. In determining factors such as, but not limited to: (1) the degree of inherent or acquired distinctiveness of the mark in this State; (2) the duration and extent of use of the mark in connection with the goods and services with which the mark is used; (3) the duration and extent of advertising and publicity of the Mark in this State; (4) the geographical extent of the trading area in which the mark is used; (5) the channels of trade for the goods or services with which the mark is used; (6) the degree of recognition of the mark in the trading areas and channels of trade in this State used by the mark's owner and the person against whom the injunction is sought: (7) the nature and extent of use of the same or similar mark by third parties; and (8) whether the mark is the subject of a State registration under the Act of March 3, 1881, or under the Act of February 20, 1905, or on the principal register.

**Pursuant to (765 ILCS 1036/70) Sec.70**. Remedies. Any owner of a mark registered under this Act may proceed by suit to enjoin the manufacturer, use, display or sale of any counterfeits, or imitations thereof and any court of competent jurisdiction may grant injunctions to restrain such manufacture, use, display, or sale as may be by the court deemed just and reasonable, and may require the defendant's to pay to such owner all profits derived from or all damages suffered by reason of such wrongful manufacture, use, display, or sale or both; and the court may also order that any such counterfeits or imitations in the possession or under the control of any defendant in the case be delivered to an officer of the court, or to the complainant, to be destroyed. The court in its discretion, may enter judgment for an amount not to exceed 3 times the profits and damages or reasonable attorneys fees of the prevailing party, or both, in those cases in which the court finds the other party committed the wrongful acts with knowledge or in bad faith or otherwise as according to the circumstances of the case. The enumeration of any right or remedy in this Act shall not affect a registrant's right to prosecute under any penal law of this State. (Source PA 90-231, eff. 1-1-98)

1. **U.S. Code** › Title 15 › Chapter 22 › Subchapter III › § 1125

## 15 U.S. Code § 1125 - False designations of origin, false descriptions, and dilution forbidden

- US Code
- Notes
- Authorities (CFR)

(a)CIVIL ACTION

(1)Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

**(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

**(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

**(2)** As used in this subsection, the term "any person" includes any State, instrumentality of a State or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this chapter in the same manner and to the same extent as any nongovernmental entity.

**(3)** In a civil action for trade dress infringement under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional.

**(b)IMPORTATION**

Any goods marked or labeled in contravention of the provisions of this section shall not be imported into the United States or admitted to entry at any customhouse of the United States. The owner, importer, or consignee of goods refused entry at any customhouse under this section may have any recourse by protest or appeal that is given under the customs revenue laws or may have the remedy given by this chapter in cases involving goods refused entry or seized.

**(c)DILUTION BY BLURRING; DILUTION BY TARNISHMENT**

**(1)INJUNCTIVE RELIEF**

Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

**(2) DEFINITIONS**

**(A)** For purposes of paragraph (1), a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following:

**(i)** The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.

**(ii)** The amount, volume, and geographic extent of sales of goods or services offered under the mark.

**(iii)** The extent of actual recognition of the mark.

**(iv)** Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

**(B)** For purposes of paragraph (1), "dilution by blurring" is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark. In determining whether a mark or trade name is likely to cause dilution by blurring, the court may consider all relevant factors, including the following:

**(i)** The degree of similarity between the mark or trade name and the famous mark.

**(ii)** The degree of inherent or acquired distinctiveness of the famous mark.

**(iii)** The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark.

**(iv)** The degree of recognition of the famous mark.

**(v)** Whether the user of the mark or trade name intended to create an association with the famous mark.

**(vi)** Any actual association between the mark or trade name and the famous mark.

**(C)** For purposes of paragraph (1), "dilution by tarnishment" is association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark.

**(3)EXCLUSIONS**The following shall not be actionable as dilution by blurring or dilution by tarnishment under this subsection:

**(A)**Any fair use, including a nominative or descriptive fair use, or facilitation of such fair use, of a famous mark by another person other than as a designation of source for the person's own goods or services, including use in connection with—

**(i)** advertising or promotion that permits consumers to compare goods or services; or

**(ii)** identifying and parodying, criticizing, or commenting upon the famous mark owner or the goods or services of the famous mark owner.

**(B)** All forms of news reporting and news commentary.

**(C)** Any noncommercial use of a mark.

**(4)BURDEN OF PROOF**In a civil action for trade dress dilution under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that—

**(A)** the claimed trade dress, taken as a whole, is not functional and is famous; and

**(B)** if the claimed trade dress includes any mark or marks registered on the principal register, the unregistered matter, taken as a whole, is famous separate and apart from any fame of such registered marks.

**(5)ADDITIONAL REMEDIES**In an action brought under this subsection, the owner of the famous markshall be entitled to injunctive relief as set forth in section 1116 of this title. The owner of the famous mark shall also be entitled to the remedies set forth in sections 1117(a) and 1118 of this title, subject to the discretion of the court and the principles of equity if—

**(A)** the mark or trade name that is likely to cause dilution by blurring or dilution by tarnishment was first used in commerce by the person against whom the injunction is sought after October 6, 2006; and

**(B)**in a claim arising under this subsection—

**(i)** by reason of dilution by blurring, the person against whom the injunction is sought willfully intended to trade on the recognition of the famous mark; or

(ii) by reason of dilution by tarnishment, the person against whom sought willfully intended to harm the reputation of the famous mar

**(6) OWNERSHIP OF VALID REGISTRATION A COMPLETE BAR TO ACTION**
a person of a valid registration under the Act of March 3, 1881, or of February 20, 1905, or on the principal register under this chapte complete bar to an action against that person, with respect to that

(A) is brought by another person under the common law or a statu and

(B)(i) seeks to prevent dilution by blurring or dilution by tarnishm

(ii) asserts any claim of actual or likely damage or harm to the dis reputation of a mark, label, or form of advertisement.

**(7) SAVINGS CLAUSE**

Nothing in this subsection shall be construed to impair, modi the applicability of the patent laws of the United States.
**(d) CYBERPIRACY PREVENTION**

(1) (A) A person shall be liable in a civil action by the owner of a personal name which is protected as a mark under this section, if, the goods or services of the parties, that person—

(i) has a bad faith intent to profit from that mark, including a pers is protected as a mark under this section; and

(ii) registers, traffics in, or uses a domain name that—

(I) in the case of a mark that is distinctive at the time of registrat name, is identical or confusingly similar to that mark;

(II) in the case of a famous mark that is famous at the time of re the domain name, is identical or confusingly similar to or dilutive

(III) is a trademark, word, or name protected by reason of sectio 18 or section 220506 of title 36.

(B) (i) In determining whether a person has a bad faith intent des subparagraph (A), a court may consider factors such as, but not li

(I) the trademark or other intellectual property rights of the person, if any, in the domain name;

(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).

(ii) Bad faith intent described under subparagraph (A) shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful.

**(C)** In any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark.

**(D)** A person shall be liable for using a domain name under subparagraph (A) only if that person is the domain name registrant or that registrant's authorized licensee.

**(E)** As used in this paragraph, the term "traffics in" refers to transactions that include, but are not limited to, sales, purchases, loans, pledges, licenses, exchanges of currency, and any other transfer for consideration or receipt in exchange for consideration.

**(2) (A)** The owner of a mark may file an in rem civil action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located if—

**(i)** the domain name violates any right of the owner of a mark registered in the Patent and Trademark Office, or protected under subsection (a) or (c); and

**(ii)** the court finds that the owner—

**(I)** is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action under paragraph (1); or

**(II)** through due diligence was not able to find a person who would have been a defendant in a civil action under paragraph (1) by—

**(aa)** sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar; and

**(bb)** publishing notice of the action as the court may direct promptly after filing the action.

**(B)** The actions under subparagraph (A)(ii) shall constitute service of process.

**(C)** In an in rem action under this paragraph, a domain name shall be deemed to have its situs in the judicial district in which—

**(i)** the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located; or

**(ii)** documents sufficient to establish control and authority regarding the disposition of the registration and use of the domain name are deposited with the court.

**(D) (i)** The remedies in an in rem action under this paragraph shall be limited to a court order for the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark. Upon receipt of written notification of a filed, stamped copy of a complaint filed by the owner of a mark in a United States district court under this paragraph, the domain name registrar, domain name registry, or other domain name authority shall—

**(I)** expeditiously deposit with the court documents sufficient to establish the court's control and authority regarding the disposition of the registration and use of the domain name to the court; and

**(II)** not transfer, suspend, or otherwise modify the domain name during the pendency of the action, except upon order of the court.

**(ii)** The domain name registrar or registry or other domain name authority shall not be liable for injunctive or monetary relief under this paragraph except in the case of bad faith or reckless disregard, which includes a willful failure to comply with any such court order.

**(3)** The civil action established under paragraph (1) and the in rem action established under paragraph (2), and any remedy available under either such action, shall be in addition to any other civil action or remedy otherwise applicable.

**(4)** The in rem jurisdiction established under paragraph (2) shall be in addition to any other jurisdiction that otherwise exists, whether in rem or in personam.

(July 5, 1946, ch. 540, title VIII, § 43, 60 Stat. 441; Pub. L. 100–667, title I, § 132, Nov. 16, 1988, 102 Stat. 3946; Pub. L. 102–542, § 3(c), Oct. 27, 1992, 106 Stat. 3568; Pub. L. 104–98, § 3(a), Jan. 16, 1996, 109 Stat. 985; Pub. L. 106–43, §§ 3(a)(2), 5, Aug. 5, 1999, 113 Stat. 219, 220; Pub. L. 106–113, div. B, § 1000(a)(9) [title III, § 3002(a)], Nov. 29, 1999, 113 Stat. 1536, 1501A–545; Pub. L. 109–312, § 2, Oct. 6, 2006, 120 Stat. 1730; Pub. L. 112–190, § 1(a), Oct. 5, 2012, 126 Stat. 1436.)

false descriptions, and dilution forbidden

The Supreme Court clarified in its Lexmark decision (LEXMRK INTL, INC V STATIC CONTROL COMPONENTS, INC) that the plaintiff need not necessarily be a competitor, so long as they suffered "an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations".

Supreme Court of the United States No. 12-873 LEXMARK INTERNATIONL, INC. V STATIC CONTROL COMPONENTS, INC opinion of the court states at 15 U.S.C. 1125 (a). Section 1125 (a) provides: (1) any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term name, symbol, or device or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, Which - 3 (c) (a) is in likely to cause confusion or to cause mistake up to deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (b) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services or commercial activities, "shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act".

Section 1125 (a) thus creates two distinct bases of liability; False association, 1125 (a) (1) (a), and false advertising, 1125 (a) (1) (b). See Watts v Frito Lay, INC, 978 F. 2D 1093, 1108 (CA9 1992) Static Control alleged only false advertising.

Direct application of the zone-of-interests test and the approximate cause requirement supplies the relevant limits on who may sue under 1125 (a). These principles provide better guidance than the multifactor balancing test urged by Lexmark, the direct-competitor test applied by the Sixth Circuit PA 15-18. (C) Under those principles, Static Control comes within the class of plaintiff's authorized to sue under 1125 (a), It's alleged injuries- lost sales and damage to its business reputation-fall within the zone of interest protected by the act, and Static Control sufficiently alleged that its injuries were proximately caused by Lexmark' s misrepresentations pp18-22    697 f. 3d 387, affirmed Scallia, J. delivered the opinion for a unanimous court.

CITE AS US – (2014) SYLLABUS

CF Bridge v Phoenix Bond & Indemnity Co., 553 U.S. 639, 656, thus, a plaintiff suing under 1125 (a) must show that its economic or reputational injury flows directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff. Pp 13-15.

Respectfully submitted

_____  11-13-2018

Maurice Pearson

100 West Randolph Street P O BOX 64577

Chicago Illinois 60664